## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
## GREENBELT DIVISION

MCGHEE, RICHARD,                          Case No.

    AND

MCGHEE, JACQUELINE,

        Plaintiffs,

     v.

JPMORGAN CHASE BANK, NA

    AND

SERVICELINK,

    AND

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS,

    AND

KONDAUR CAPITAL CORPORATION,

    AND

SIGNATURE GROUP HOLDINGS, INC.

    AND

FULTON BANK, NA

    AND

SHAPIRO & BURSON, LLP

    AND

BIERMAN, GEESING, WARD & WOOD,
LLC

        Defendants.

## COMPLAINT

Comes now, Plaintiffs, Richard and Jacqueline McGhee, by and through counsel, and files this Complaint for compensatory damages and injunctive relief.

### JURISDICTION

The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1334 and venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### PARTIES

1. Plaintiffs are African-american and are husband and wife and reside at 13303 Old Fort Road, Fort Washington, MD  20744.

2. JPMorgan Chase Bank, NA is a multinational banking corporation that handles securities, retail banking, and investments, with its domestic headquarters located at 270 Park Avenue, New York, NY 10017, and its registered agent, as C T Corporation System, 208 South LaSalle Street, Suite 814, Chicago, IL 60604.

3. Signature Group Holdings, Inc., a diversified business and financial services enterprise located at 15303 Ventura Boulevard, Suite 1600, Sherman Oaks, CA 91403, with its registered agent for service of process as David Brody, 15303 Ventura Boulevard, Suite 1600, Sherman Oaks, CA 91403, is the successor in interest to Fremont Reorganizing Corporation f/k/a Fremont Investment & Loan, who was the original lender for the subject mortgage.

4. ServiceLink is a subsidiary of Fidelity National Financial and functions as a provider of default related products and services to leading mortgage originators and servicers.  It acted as an agent of JPMorgan Chase Bank, NA, in relation to the subject foreclosure.  Its Registered Office Address is 4000 Industrial Boulevard, Aliquippa, PA 15001.

5. Mortgage Electronic Registration Systems ("MERS") is organized and existing under the laws of Delaware, and has the address of P.O. Box 2026, Flint, MI 48501.  MERS is incorporated in the State of Delaware and has its Registered Agent as The Prentice-Hall Corporation System, Inc., which is located at 2711 Centerville Road, Suite 400, Wilmington, DE 19808.  MERS is named as the Beneficiary under the Pertinent Deeds of Trust.

6. Kondaur Capital Corporation ("Kondaur") is organized and existing under the laws of Delaware, and operates out of One City Boulevard West, Suite 1900, Orange, CA 92868.  Its Registered Agent is Corporation Service Company, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833.

7. Fulton Bank, NA f/k/a Resource Bank ("Fulton Bank"), is a Pennsylvania-chartered bank organized and existing under the laws of the Commonwealth of Pennsylvania, and has its current registered office and principal place of business as One Pennsylvania Square, P.O. Box 4887, Lancaster, PA  17604.

8. Shapiro & Burson, LLP and Bierman, Geesing, Ward & Wood, LLC were the substitute trustees that filed their respective foreclosure actions.

**PERTINENT FACTS**

**I. The Thornville Property**

9. Plaintiffs granted a deed of trust to Fremont Investment & Loan, dated February 2nd, 2007, in the amount of $480,000, for real property located at 9702 Thornville Drive, Fort Washington, MD 20744 (the "Thornville Property"), naming Friedman & Mac Fayden, P.A. and MERS as Trustee and Beneficiary respectively.

10. The assessed value of the Thornville Property is now $385,800.

11. The Thornville deed of trust does not contain a certification that it was prepared by an attorney in good standing in the State of Maryland.

12. Based upon information and belief, the note originally secured by the Thornville deed of trust has been pooled and securitized into the Home Equity Loan Trust 2007-FRE1 (the "Nationstar Trust").

13. On or about June 27th, 2007, Nationstar Mortgage LLC filed a prospectus dated June 26th, 2007, regarding the Nationstar Trust, which describes the structure of the trust and the rights and obligations of the parties thereto.

14. On or about July 25th, 2007, Nationstar Mortgage LLC filed a pooling and servicing agreement dated June 1st, 2007, by and among Nationstar Funding LLC, as depositor, Nationstar Mortgage LLC, as seller and servicer, Wells Fargo Bank, N.A., as master servicer, and the Bank of New York as trustee, which further describes the structure of the Nationstar Trust and the rights and obligations of the parties thereto.

15.   Based upon information and belief, and pursuant to the pooling and servicing agreement, at 11:00 a.m. EST on the Startup Day (July 10th, 2007), the Nationstar Mortgage LLC sold and conveyed the Home Equity Loans and the money, instruments and other property related thereto to the Nationstar Funding LLC.

16.   Pursuant to the pooling and servicing agreement, Nationstar Funding LLC conveyed its alleged interest in the subject mortgages to the Bank of New York.

17.   By assignment dated March 23rd, 2009, MERS assigned the Thornville deed of trust to Defendant, JPMorgan Chase Bank, NA.

18.   By an Appointment of Substitute Trustee signed and sealed April 15th, 2009, and recorded on May 20th, 2009, in the land records of Prince George's County, JPMorgan Chase Bank, NA, appointed agents of Shapiro & Burson, LLP as the Substitute Trustees.

19.   Agents of Shapiro & Burson, LLP, allegedly on behalf of JPMorgan Chase Bank, NA, filed a foreclosure action in the Circuit Court for Prince George's County on June 15th, 2009.

20.   On or about September 11th, 2009, Shapiro & Burson, LLP, through its agents, filed an affidavit of indebtedness in the foreclosure case.

21.   JPMorgan Chase Bank, NA bought back the property at foreclosure sale and the Circuit Court for Prince George's County ratified the sale on or about January 4th, 2011.

## II. The Old Fort Road Property

22.  Plaintiffs granted a deed of trust to Resource Bank, dated December 4th, 2006, in the amount of $684,000 for real property located at 13303 Old Fort Road, Fort Washington, MD  20744 (the "Old Fort Road Property").

23.  The assessed value of the Thornville Property is now $531,400.

24.  Based upon information and belief, the note originally secured by the pertinent deed of trust in this matter has been pooled and securitized into the CSMC Mortgage-Backed Trust 2007-3 (the "Credit-Suisse Trust").

25.  On or about June 6th, 2007, Credit Suisse First Boston Mortgage Securities Corp. filed a pooling and servicing agreement dated March 1st, 2007, by and among Credit Suisse First Boston Mortgage Securities Corp., as depositor, DLJ Mortgage Capital, Inc., as seller, Wells Fargo Bank, N.A., as servicer, master servicer, and trust administrator, Universal Master Servicing LLC, as servicer, Washington Mutual Mortgage Securities Corp., as servicer, Select Portfolio Servicing, Inc., as servicer, special servicer, and modification oversight agent, and, U.S. Bank, NA, as trustee, which describes the structure of the Credit Suisse Trust and the rights and obligations of the parties thereto.

26.  On or about April 3rd, 2007, Credit Suisse First Boston Mortgage Securities Corp. filed a prospectus supplement to prospectus dated March 27th, 2007, regarding the Credit Suisse Trust, which further describes the structure of the trust and the rights and obligations of the parties thereto.

27.  Based upon information and belief, and pursuant to the pooling and servicing agreement, on the Startup Day (March 30th, 2007), the Credit Suisse First Boston Mortgage Securities Corp. sold and conveyed its alleged interests in the pertinent mortgages to U.S. Bank, NA.

28.  By Deed of Appointment of Substitute Trustee dated February 18th, 2010, and recorded on March 29, 2010, in the land records of Prince George's County Maryland, DLJ Mortgage Capital, Inc., through a Document Control Officer of its Agent Select Portfolio Servicing, Inc., appointed Bierman, Geesing, Ward & Wood, LLC as Substitute Trustees under the deed of trust.

29.  On or about March 26th, 2010, Kondaur Capital Corporation filed a foreclosure action against the Plaintiffs for the Old Fort Road Property.

30.  DLJ Mortgage Capital, Inc. by Select Portfolio Servicing, Inc. f/k/a Fairbanks Capital Corp, as attorney in fact, recorded an assignment dated April 12th, 2010, assigning the deed of trust to Kondaur Capital Corporation.

31.  On or about September 27th, 2010, Bierman, Geesing, Ward & Wood, LLC, by its agents, filed an affidavit of indebtedness in the foreclosure case.

32.  Kondaur Capital Corporation bought back the property at foreclosure sale and the Circuit Court for Prince George's County ratified the sale on or about February 23rd, 2011.

## III. Facts Pertaining to Both Properties

33.  The Plaintiffs attempted to work with the servicers of their respective mortgages to modify their loans and keep the properties, but the servicers insisted upon the foreclosure.

34.  Based upon information and belief, the parties filing the respective foreclosure actions did not have standing or right to bring the foreclosure actions because (1) they were not a real party of interest, (2) the respective deeds of trust were not properly assigned, (3) the subject note was not secured by the pertinent deed of trust, and/or (4) the subject note was no longer enforceable.

35.  Based upon information and belief, the affidavits regarding indebtedness filed in the respective foreclosure actions were not based on personal knowledge and are, for that reason or otherwise, invalid.

36.  Plaintiffs allege that the defendant servicers, are not "real parties of interest" pursuant to Md. Real Property Code Ann. § 7-105.1, which requires that a foreclosure action must be taken in the name of a real party of interest.

37.  A servicer of a promissory note does not have the rights of a holder in due course.

38.  A servicer is not a real and beneficial party of interest.

39.  In fact, Plaintiffs allege that Defendants are serving the role of nothing more than debt collectors, attempting to collect a debt.

40.  Based upon information and belief, the respective original lenders may have fully sold their interests in their promissory notes in full as governed under Financial Accounting Standard Rule 140 (FAS 140).

41.  Under FAS 140, the seller of an asset must sell the asset to a third party as an arms length transaction and once an asset has been sold, the seller forever loses control of the asset.

42.  Furthermore, under FAS 140, the seller may not repurchase the asset for the purposes of "reattachment" and may only repurchase the asset in an open market transaction as an unsecured note.

43.  Insofar as any Defendants claim to have reacquired the promissory note for the purpose of foreclosure, said Defendant committed fraud pursuant to the Truth in Lending Act.

44.  Under IRS rules governing ownership interests of an asset, tax must be paid by the owner of the promissory note for all interest/income/profits earned.

45.  Plaintiffs contend that the promissory notes were securitized into Real Estate Mortgage Investment Conduits ("REMIC's"), which are Special Purpose Vehicles ("SPV's") for tax purposes, in which only the individual shareholders pay the tax for any profits earned.

46.  A loan, once securitized is permanently converted into a stock and registered in the SEC database as a permanent fixture to the REMIC.

47.  Accordingly, Plaintiffs allege that the real and beneficial interest holders of the promissory notes, if any, are the individual shareholders of the REMIC.

48.  In the event of a default, the REMIC (and therefore the individual shareholders) write off the debt and receive tax credit for the write off.

49.  Therefore the debt is discharged and the debt in this matter has been discharged in full.

50.  Since the Defendants are not real and beneficial parties of interest, the Defendants were not authorized to institute the foreclosure action.

51. Since the deeds of trust secure the notes and since the notes are not enforceable, the deeds of trust are not valid for purpose of a foreclosure sale.

52. Plaintiffs objected to the foreclosure sales, but the Circuit Court for Prince George's County did not address the merits of Plaintiffs' opposition owing to the timeliness of their objections.

## COUNT ONE - FAIR DEBT COLLECTION PRACTICES ACT

53. Plaintiffs are "consumers" under the Federal Debt Collection Practice Act (hereafter "FDCPA"). 15 U.S.C. § 1692a(3).

54. Each mortgage on real property, that is owner-occupied by a natural person, is a "debt" as has been defined by the FDCPA. 15 U.S.C. § 1692a(5), as the mortgages at issue are.

55. Shapiro & Burson, LLP and Bierman, Geesing, Ward & Wood, LLP (hereafter referred to as the "Substitute Trustees") are "debt collectors" under the FDCPA. 15 U.S.C. § 1692a(6).

56. Each Substitute Trustee represents an entity that engaged in unfair and/or unconscionable means to directly or indirectly collect or attempt to collect a debt.

57. The Substitute Trustees violated the FDCPA, 15 U.S.C. §§ 1692e(5), 1692e(6), and 1692f, by docketing certain securitized foreclosures when they knew or should have known that they were not proper because there was no adequate procedure by which to verify the legal rights of the parties allegedly directed them to foreclose, and supporting the docketing of the foreclosure with false, misleading,

incorrect, inaccurate, and/or imprecise affidavits, supporting the sale of the Home, and obtaining ratification.

58.   The false and/or misleading affidavits filed by the Substitute Trustees in support of the docketing and ratification of the foreclosures was a persistent and/or intentional false representation as a deceptive means to directly or indirectly collect or attempt to collect a consumer debt from the Plaintiffs in violation of 15 U.S.C. § 1692e(10).

59.   The Substitute Trustees failed to employ an adequate procedure to verify the nature or status of the alleged debt and/or the alleged real party of interest therefore engaging in unfair practices in violation of 15 U.S.C. § 1692f.

60.   Fulton Bank and Signature Group Holdings, Inc. (hereafter referred to as the "Originating Lenders") are each considered a "debt collector" as that term has been defined by the FDCPA. 15 U.S.C. § 1692a(6).

61.   Each Originating Lender represents an entity that engaged in unfair or unconscionable practices, in violation of 15 U.S.C. § 1692f, to directly or indirectly collect or attempt to collect a debt by using deception and/or mischaracterization to securitize the debts.

62.   By mischaracterizing the nature of the debt, the Originating Lenders violated 15 U.S.C. § 1692e(10) by acting in a manner of persistent and/or intentional false representations as a deceptive means to indirectly or directly collect or attempt to collect a securitized consumer debt.

63.   Kondaur and JP Morgan Chase (hereafter referred to as the "Foreclosing Parties") are "debt collectors" under 15 U.S.C. § 1692a(6).

64.   Each Foreclosing Party represents an entity that engaged in unfair or unconscionable practices, in violation of 15 U.S.C. § 1692f, to directly or indirectly collect or attempt to collect a debt by initiating a deceptive foreclosure allegedly on behalf of the real party of interest, buying back the property at the foreclosure by crediting the alleged loan balance, and selling the property free and clear for the benefit of a party other than the alleged real party of interest.

65.   ServiceLink (hereafter referred to as the "Servicer") is a "debt collector" under 15 U.S.C. § 1692a(6).

66.   The Servicer represents an entity that engaged in unfair or unconscionable practices in violation of 15 U.S.C. § 1692f, to directly or indirectly collect a debt though misrepresentations and/or deceptive means by failing to consider the NPV of a loan modification or any other method of loss mitigation prior to foreclosure, and by failing to otherwise reconcile the rights and obligations set forth between the parties to the respective deeds of trust with the rights and obligations between itself and the so-called "investors" directing it, and by failing to employ an adequate procedure to verify the alleged debt it was collecting, and did so by engaging in persistent and/or intentional false representations as a deceptive means in violation of 15 U.S.C. § 1692e(10).

67.   MERS is a "debt collector" under 15 U.S.C. § 1692a(6).

68.   MERS engaged in unfair or unconscionable practices to directly or indirectly collect on a debt when it assigned the subject instruments, when MERS knew or should have known that the assignments not proper because there was no adequate

procedure by which to verify the legal rights of the parties allegedly directed them to assign rights, and MERS was aware that the subject debt instruments were not reliable and knew or should have known that it did not have the authority to assign interests in notes and deeds of trust in the manner in which it did.

## COUNT TWO – RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

69.  Plaintiffs assert that the actions engaged in by the Defendants constitute a violation of the Federal Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 – 1968, which encompasses fraud claims that typically arise in business litigation.

70.  The Defendants are an "enterprise" as defined under 18 U.S.C. 1962, because they are legal entities through which patterns of racketeering activity are conducted and into which profits from the racketeering are invested.

71.  They generated income derived from a pattern of racketeering, and/or from the collection of an unlawful debt, and used the income to invest in their enterprises in violation of 18 U.S.C. 1962(a).

72.  Persons employed by or associated with their enterprises engaged in activities which affect interstate commerce through a pattern of racketeering activity and/or the collection of an unlawful debt in violation of 18 U.S.C. 1962(c).

73.  The Defendants' said "pattern" consists of the commission of at least two predicate offenses, as specified in 18 U.S.C. 1961, including, but not limited to: (1) engaging in for profit deceptive and unfair business practices that include

making misrepresentations of fact tending to deceive, (2) failing to properly and competently underwrite the mortgages, (3) failing to properly and competently service the mortgages, (4) failing to verify the nature and/or character of the alleged debts of putative real parties of interest and putative parties claiming rights pursuant to instruments other than the pertinent notes and/or deeds of trust, and (5) prosecuting foreclosure actions based on incorrect, inaccurate, or otherwise false affidavits and/or unverified information.

74.   The racketeering acts are related and amount to or pose a threat of continued activity and are related because they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events. H.J., Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229 (1989).

75.   The racketeering acts were accomplished though periods of repeated past or present conduct and project into the future a threat of repetition.

## COUNT THREE – WRONGFUL FORECLOSURE

76.   Plaintiffs aver that the foreclosure sales pertaining to the properties were wrongful in that Defendants (1) did not have standing or legal right to bring the actions, (2) engaged in practices that can fairly be said to constitute intrinsic fraud in so far as Defendants made intentional misrepresentations in the foreclosure action in order to force a sale of the Property, and (3) engaged in lending practices that caused Plaintiffs to owe more money on the properties

than what the properties are worth, with little to no chance
that the Plaintiffs could actually pay the mortgages.

**I. ORIGINATION**

77.   As professional institutions experienced with mortgage
lending, and engaged in a mortgage transaction with the
Plaintiffs, Defendants owed the Plaintiffs both a fiduciary
duty and a legal duty of reasonable care.

78.   Defendants engaged in lending practices that contributed to
an artificial inflation of property values, including the
value of the Thornville and Old Fort Road Properties, and
moreover Defendants' lending practices involved providing
mortgages that were likely to end in default.

79.   Moreover, Plaintiff's actions in failing to act prudently
and/or reasonably to underwrite the mortgages, while at the
same time marketing the mortgages in the secondary market,
caused the artificial inflation of property values.

80.   Defendants hold themselves out as trusted organizations
experienced in mortgage lending practices, and thus knew or
should have known that the mortgage broker was unreliable, or
alternatively, once Defendants learned that the mortgage had
not been properly underwritten, Defendants failed to act
reasonably and/or in good faith and/or according to their
fiduciary duties, by, among other things, failing to work out
the mortgage with the Plaintiffs prior to foreclosure, and by
making misrepresentations in conjunction with the sale of the
mortgage into the secondary market.

81.   By participating in conduct that artificially inflated real
property values Defendants caused the Plaintiffs to suffer
losses, and in doing so, breached their legal duties.

82.  Still further, Defendants' acts and omissions actually caused the Plaintiffs to default.

83.  Defendants intended that the Plaintiffs rely on the mortgage underwriting in order to profit financially.

84.  The Plaintiffs reasonably relied upon the Defendants' underwriting since they are large institutions that hold themselves out as honest and forthright with years of experience and expertise.

85.  The origination of the subject mortgages as detailed above, and without limitation to specific references stated above, was unfair, unconscionable, and contrary to law and the foreclosures predicated upon them, without taking efforts to mitigate damages, constitutes a wrongful foreclosure, by virtue of, among other ways, breaching covenants of good-faith and fair dealing.

**II.  ASSIGNMENT**

86.  Naming MERS as an additional party in the deeds of trust, i.e. the beneficiary, as separate from the lender severs the traditional relationship between borrowers and lenders in deeds of trust.

87.  Ironically, although MERS is named as the beneficiary, MERS does not possess a beneficial interest in the mortgage because MERS does not hold any promissory notes or other debt instruments secured by deeds of trust.

88. Because MERS lacks any beneficial interest in the mortgages it cannot hold legal title, institute foreclosure proceedings, or assign the mortgage in anticipation of foreclosure.

89. Insofar as MERS attempted to convey interests in the subject mortgages, such conveyances were defective and invalid, and the foreclosures predicated upon them constitute wrongful

foreclosure because the use of MERS to convey alleged
interests resulted in the parties instituting the foreclosure
actions to not have standing or the legal right to invoke a
foreclosure sale.

90. The Plaintiffs have been harmed by the defective and invalid
assignments, because said assignments resulted in the relevant
foreclosure actions.

**III.   SECURITIZATION**

91. Securitization is the process whereby a borrower reaches out
to a mortgage lender to finance the purchase of property or
refinance property already purchased, whereby the borrower
signs a note and deed of trust and the original lender sells
the note and assigns the mortgage to an entity "securitizing"
the note by merging the note with many similar others thus to
create a portfolio of mortgage-backed securities, which are
then sold to investors as bonds.

92. Through the use of securitization, the predatory loans
provided to the Plaintiffs led to the artificial inflation of
property values, financial overburdening of the Plaintiffs,
and the likelihood of ultimate foreclosures.

93. The loans were predatory because the Defendants knew or
should have known that they involved granting a loan to the
Plaintiffs for more than the value of the real property.

94. Securitization allowed Defendants to engage in even more
predatory lending by freeing up capital reserve requirements,
thereby compounding the pricing bubble.

95. Securitization of the subject loans involved issuing,
causing, or making materially misleading statements or
omitting material statements in the registration statements,

prospectuses, pooling and servicing agreements, and similar operative documents in the securitization process.

96. Once a specific note is securitized by pooling and selling as a bond, the specific note is no longer enforceable as such because any and all beneficial interest therein is converted into a security as defined by the Md. Code, Commercial Law Art. § 8-102, and enforcement of the security is governed by Md. Code, Commercial Law Art. § 8-302.

97. Moreover, any alleged certificate holders claiming rights under Md. Code, Commercial Law Art. § 8-302, are not holders in due course pursuant to Md. Code Ann., Commercial Law Art. § 3-302, since the notes were not negotiated into the securities for value, in good-faith, and without notice of defect.

98. The Defendants that carried out the relevant foreclosures did so without standing or the legal right to do so, since the relevant notes were no longer individually enforceable as negotiable instruments but rather were enforceable only to the extent of the proceeds attributable to the certificate associated with the relevant pool of notes.

**IV. FILING OF THE FORECLOSURE ACTIONS**

99. Defendants filed or caused to be filed in state court affidavits executed by its employees or employees of third-party service providers making various assertions, such as the statement of indebtedness, in which the affiant represented that the assertions in the affidavit were made based on personal knowledge or based on a review by the affiant of the relevant books and records when, in many cases, they were not based on such personal knowledge or review of the relevant books and records, causing the statement of indebtedness and other such affidavit to be not accurate.

100. Defendants filed or caused to be filed in state courts, or in local land records offices, numerous affidavits or other mortgage-related documents that were not properly notarized, including those not signed or affirmed in the presence of a notary.

101. Defendants litigated foreclosure proceedings without always ensuring that either the promissory note or the mortgage documents were properly endorsed or assigned at the appropriate times.

102. Defendants failed to devote sufficient financial, staffing and managerial resources to ensure proper administration of its foreclosure processes.

103. Defendants failed to devote to its foreclosure processes adequate oversight, internal controls, policies, and procedures, compliance risk management, internal audit, third party management, and training.

104. Defendants failed to sufficiently oversee outside counsel and other third-party providers handling foreclosure-related services.

105. The Plaintiffs experienced harm as a result of the misrepresentations during the foreclosure action, which forced the sale of the property.

106. Md. Code Ann., Real Prop. § 7-105.1, mandates that certain notices, documents, statements, and affidavits be provided to mortgagors, homeowners, and third parties during the foreclosure process..

107. Each requirement within § 7-105.1 is a statutory condition precedent to docketing a foreclosure, conducting a foreclosure sale, or ratifying a foreclosure sale.

108. The Substitute Trustees failed to comply with the provisions by knowingly and willfully filing false or misleading documents regarding the "nature of the default" in support of the Order to Docket in every foreclosure docketed. Md. Code Ann., Real Prop. § 7-105.1(e).

109. Each such false or misleading affidavit was filed in lieu of an affidavit or statement required under Md. Code Ann., Real Prop. § 7-105.1(e)(ii).

110. Each such false or misleading affidavit or statement is invalid and, as a part of the requirements for a proper foreclosure procedure to have taken place, they inherently render any foreclosure sale under the current circumstances void.

111. In each foreclosure case, the Substitute Trustees obtained a ratification of the sale by false or misleading affidavits in addition to the false or misleading affidavits filed with the Order to Docket.

112. As a direct result of the above stated actions by the Substitute Trustees, Maryland courts ratified the foreclosure sales of the Plaintiffs' properties and ratified the foreclosure sales of the homes, thereby causing the Plaintiffs to suffer damages as a direct result of the failure of the Substitute Trustees to comply with the provisions of § 7-105.1.

## COUNT FOUR: ACTION TO QUIET TITLE

113. Pursuant to Md. Real Property Code Ann. §14-108, Plaintiffs aver that the foreclosure sales pertaining to the subject properties were not valid in that the Defendants did not have

standing to bring the actions, and engaged in practices that constitute intrinsic fraud in so far as Defendants made intentional misrepresentations in the foreclosure action in order to force a sale of the properties.

114. Accordingly, the trustees deeds to the foreclosing parties, who wrongfully foreclosed, should be rescinded, and title to the relevant properties should be vested in the Plaintiffs.

**PRAYER**

WHEREFORE Plaintiffs pray for judgment and decree against Defendants as follows:

A.   That a judgment and decree be entered quieting title to the properties in Plaintiffs.

B.   That the Court enter a declaratory judgment and decree that Plaintiffs have an ownership interest to the properties in fee simple, free and clear of any claims by Defendants; and

C.   That the Court grant such other and further relief as is just and equitable.

D.   Enter judgment against Defendants and in favor of Plaintiffs for each statutory violation;

E.   Enjoin Defendants from further violating statutes;

F.   Award Plaintiffs monetary civil penalties from Defendant for each statutory violation.

G.   Void or rescind the entire mortgage loan transaction in including any security interest in the property;

H.   Return any and all monies paid by Plaintiffs including all payments made in connection with said mortgage loan transaction;

I.   Award Plaintiffs a judgment for actual damages to be determined at trial, including attorneys' fees and costs;

J.   Assess punitive damages against Defendants; and,

K.   Award Plaintiff such additional relief as the Court deems just and proper.

Respectfully Submitted,

/s/
_____
Tyler Jay King, Esq.
1407 Nicholson St., NW
Washington, DC  20011
(202) 436-2641

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues triable as such.

Respectfully submitted,

/s/
_____
Tyler Jay King, Esq.