IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RICHARD MCGHEE, et al.  :

   v.  :  Civil Action No. DKC 12-3072

JP MORGAN CHASE BANK, N.A.,
   et al.  :

**MEMORANDUM OPINION**

Presently pending and ready for review are the motions to dismiss filed by Defendants JP Morgan Chase Bank, N.A. ("JP Morgan") and Mortgage Electronic Registration Systems ("MERS") (ECF No. 9); Kondaur Capital Corporation ("Kondaur") (ECF No. 7); Fulton Bank, N.A. (ECF No. 5); Signature Group Holdings, Inc. ("Signature") (ECF No. 4); Shapiro & Burson, L.L.P. (ECF No. 3), and BWW Law Group, L.L.C. (ECF No. 15).[1]  The issues have been fully briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the motions to dismiss will be granted.

---

[1] BWW Law Group, L.L.C., was formerly Bierman, Gessing, Ward & Wood, L.L.C.

**I.  Background**

The following facts are either set forth in the complaint, evidenced by documents referenced or relied upon in the complaint, or are matters of public record of which the court may take judicial notice.[2]

**A.  Thornville Drive Property**

On February 2, 2007, Plaintiffs Richard McGhee and Jacqueline McGhee obtained a loan of $480,000 from Signature as part of a refinance transaction on Plaintiffs' property at Thornville Drive in Fort Washington, Maryland ("Thornville

---

[2] "Although as a general rule extrinsic evidence should not be considered at the 12(b)(6) stage," the court may consider such evidence where the plaintiff has notice of it, does not dispute its authenticity, and relies on it in framing the complaint. *American Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2002); *see also Douglass v. NTI-TSS, Inc.*, 632 F.Supp.2d 486, 490 n. 1 (D.Md. 2009). Here, Defendants have attached numerous documents – including deeds of trust, promissory notes, and appointments of substitute trustees – which are referenced or relied upon by the complaint. In their opposition papers, Plaintiffs do not challenge the authenticity of the attached documents. Thus, the court may consider them in resolving the pending motions to dismiss.

Furthermore, "a federal court may consider matters of public record such as documents from prior . . . court proceedings in conjunction with a Rule 12(b)(6) motion." *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). This is particularly true where, as here, Defendants seek dismissal pursuant to the doctrine of *res judicata*. *See Brooks v. Arthur*, 626 F.3d 194, 200 (4th Cir. 2010) ("[W]hen entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact." (internal marks and citation omitted)).

2

Drive"). (ECF No. 4-1).[3] The loan was secured by a deed of trust granting Signature a security interest in the property, and the deed of trust was recorded among the land records of Prince George's County. (*Id.*). MERS was listed as the deed of trust's beneficiary. (ECF No. 4-2). On March 23, 2009, MERS assigned the deed of trust to JP Morgan and it was recorded among the land records of Prince George's County. (ECF No. 9-4). On April 15, 2009, JP Morgan appointed John Burson and others from the law firm Shapiro & Burson, LLP, as substitute trustees of the deed of trust.[4] This appointment was recorded among the land records of Prince George's County. (ECF No. 9-5).

On June 15, 2009, John Burson — as substitute trustee — initiated foreclosure proceedings on the Thornville Drive property in the Circuit Court for Prince George's County, Maryland. (ECF No. 9-6, docket for case number CAE09-17323). On or about September 11, 2009, Shapiro, by its agents, filed an affidavit of indebtedness in the foreclosure case. (ECF No. 1 ¶ 20). JP Morgan bought the property at a foreclosure sale. (*Id.*

---

[3] Fremont Investment & Loan provided the loan. Signature Group Holdings is its successor in interest.

[4] Plaintiff has erroneously named Mr. Burson's law firm, Shapiro & Burson, L.L.C., rather than Mr. Burson himself, as a defendant in this case. Given that the complaint will be dismissed on other grounds, however, the misnomer is of no real consequence.

at ¶ 21). On November 12, 2010, Plaintiffs filed a "Verified Counter Complaint and Injunctive Relief Pursuant to Civ. R. 65." (ECF No. 3-4). The counterclaim alleged that Shapiro & Burson, John Burson, and JP Morgan failed to disclose material information pertaining to the loan and to provide Plaintiffs important documents in violation of numerous provisions of federal law, resulting in loss of property and damages. (*Id.*). The circuit court did not credit these allegations and ratified the foreclosure sale on December 29, 2010 (ECF No. 9-7); ratified the auditor's report on April 15, 2011 (ECF 9-6, dkt. no. 25); and awarded possession of Thornville Drive to JP Morgan on September 20, 2011. (*Id.*, dkt. no. 034).

Plaintiffs subsequently appealed this ruling to the Court of Special Appeals of Maryland and filed an Emergency Motion to stay the judgment in the circuit court. (*Id.*, dkt nos. 19, 28). The emergency motion was denied by the circuit court and the Court of Special Appeals, (*Id.*, dkt nos. 33, 35), and Plaintiffs' appeal was dismissed by the Court of Special Appeals on its own motion pursuant to Maryland Rule 8-602(a)(8) for failure to comply with the rules on style and formatting of court filings. (ECF No. 3-5, order of the Maryland Court of Special Appeals). On March 19, 2012, Plaintiffs filed a motion in the circuit court for an ex parte temporary restraining order and permanent injunction. (*Id.*, dkt. no. 43). This motion was

denied by the circuit court. (ECF No. 9-9). The circuit court acknowledged Plaintiffs' continued allegations of fraud on the part of the substitute trustees in the form of produced and filed fraudulent documents upon the court, but found that the allegations did not rise to the level of extrinsic fraud necessary for a court to revise an enrolled order of ratification. (*Id.* at 2). The circuit court explained that extrinsic fraud is when the fraud "'actually prevents an adversarial trial' as opposed to intrinsic, when fraud is 'employed during the course of the hearing which provides the forum for the truth to appear, albeit, the truth was distorted by the complained of fraud.'" (*Id.* (*quoting Jones v. Rosenberg*, 178 Md. App. 54, 73 (2008))).

**B. Old Fort Road Property**

On December 4, 2006, Plaintiffs obtained a loan of $684,000 from Fulton Bank.[5] The loan was secured by a deed of trust granting Fulton Bank a security interest in Plaintiffs' property located at Old Fort Road, in Fort Washington, Maryland, and the deed of trust was recorded among the land records of Prince George's County ("Old Fort Road"). (ECF No. 15, Ex. A). On February 18, 2010, DLJ Mortgage Capital, Inc., appointed Jacob Gessing and others from the BWW Law Group as substitute

---

[5] Resource Bank provided the loan. Fulton Bank is the successor by merger.

5

trustees.  (ECF No. 7-2).[6]  This appointment was recorded among the land records of Prince George's County.  (ECF No. 1 ¶ 28). On March 26, 2010, Jacob Gessing, as substitute trustee, initiated foreclosure proceedings in the Circuit Court for Prince George's County, Maryland.  (ECF No. 5-2, docket for case number CAE10-08656).  On April 12, 2010, DLJ Mortgage Capital recorded an assignment of the deed of trust to Kondaur.  (ECF No. 1 ¶ 30).  On or about September 27th, 2010, Shapiro, by its agents, filed an affidavit of indebtedness in the foreclosure case.  (ECF No. 1 ¶ 31).  Kondaur bought back the property at a foreclosure sale.  (*Id.* at ¶ 32).  The circuit court ratified the sale on February 2, 2011 (ECF No. 7-3); the auditor's report on March 29, 2011 (ECF No. 5-2, dkt no. 23); and awarded possession of Old Fort Road to Kondaur on June 15, 2011 (*Id.*, dkt. no. 29).

Plaintiffs subsequently appealed this ruling to the Court of Special Appeals and concomitantly filed an emergency motion to stay the judgment in the circuit court.  (*Id.*, dkt nos. 30, 38).  The emergency motion was denied by the circuit court and the Court of Special Appeals (*Id.*, dkt nos. 39, 41), and Plaintiffs' appeal was dismissed by the Court of Special Appeals

---

[6] Plaintiff has erroneously named Mr. Gessing's law firm, BWW Law Group, L.L.C., rather than Mr. Gessing himself, as a defendant in this case.  Given that the complaint will be dismissed on other grounds, however, the misnomer is of no real consequence.

6

on its own motion pursuant to Maryland Rule 8-602(a)(8) for failure to comply with the rules on style and formatting of court filings. (*Id.*, dkt. no. 46). On March 19, 2012, Plaintiffs filed a motion for an ex parte temporary restraining order and permanent injunction. (*Id.*, dkt. no. 47). This motion was denied by the circuit court with an opinion identical to the Thornville Drive opinion, finding that Plaintiffs' allegations of fraud did not rise to the level of extrinsic fraud necessary to revise an enrolled order of ratification. (ECF No. 5-5).

**C. Bankruptcy Filing**

On July 25, 2012, Plaintiff Jacqueline McGhee filed a Chapter 7 Voluntary Petition in the United States Bankruptcy Court for the District of Maryland. (ECF 5-4, docket for Bankruptcy Case No. 12-23657, dkt no. 1). Kondaur and JP Morgan filed motions for relief from the automatic stay on the Old Fort Road and Thornville Drive properties, respectively. (*Id.*, dkt nos. 16, 19). These motions were granted by the bankruptcy court. (*Id.*, dkt. no. 27). Jacqueline McGhee filed adversary proceedings in the bankruptcy court against JP Morgan and Kondaur in which she sought to quiet title to the two properties. McGhee alleged that JP Morgan and Kondaur "did not have standing to bring the foreclosure action[s] either because the Deed of Trust was not properly assigned to [JP

7

Morgan/Kondaur] or the Deed of Trust was unsecured at the time the foreclosure action was filed," and that JP Morgan and Kondaur "engaged in practices that can fairly be said to constitute intrinsic fraud in so far as [JP Morgan/Kondaur] made intentional misrepresentations in the foreclosure action in order to force a sale of the Property." (ECF No. 5-5, at 2-3; ECF 9-10, at 2-3). The bankruptcy court granted JP Morgan and Kondaur's motions to dismiss and dismissed the complaints with prejudice on October 30, 2012. (ECF No. 5-6; ECF No. 9-12).

On October 18, 2012, Plaintiffs filed a complaint in this court. (ECF No. 1). Plaintiffs contend that Defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*; "wrongful foreclosure"; and seek an order quieting title. Defendants moved to dismiss the complaint. (ECF Nos. 3-5, 7, 9, 15). Plaintiffs opposed each motion (ECF Nos. 20, 23-27), and each Defendant replied. (ECF Nos. 30-35).

**II. Standard of Review**

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim

8

showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n. 3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (*citing Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

**III. Analysis**

All Defendants contend that the complaint is barred by the doctrine of *res judicata* because the cause of action is based

9

fundamentally on the foreclosure actions conducted by the circuit court. Plaintiffs contend that the validity of the foreclosure action was not fully litigated and therefore available for review by this court.

The principle of *res judicata* encompasses two concepts: claim preclusion and issue preclusion, or collateral estoppel. *See In re Varat Enters., Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996) (*citing Allen v. McCurry*, 449 U.S. 90, 94 (1980)). The doctrine of *res judicata* contemplates, at a minimum, that courts not be required to adjudicate, nor defendants to address, successive actions arising out of the same transaction and asserting breach of the same duty. *See Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 563 (5th Cir. 1983). For a prior judgment to bar an action on the basis of *res judicata*, the parties in the two actions must be either identical or in privity; the claim in the second action must be based upon the same cause of action involved in the earlier proceeding; and the prior judgment must be final, on the merits, and rendered by a court of competent jurisdiction in accordance with due process. *See Grausz v. Englander*, 321 F.3d 467, 472 (4th Cir. 2003).

Three of the Defendants — MERS, Signature, and Fulton Bank — are not in privity with the parties involved in Plaintiffs' foreclosure actions. The term "privity" refers to "a person so identified in interest with another that he represents the same

legal right." *Hall v. St. Mary's Seminary & Univ.*, 608 F.Supp.2d 679, 685 (D.Md. 2009). While MERS, Signature, and Fulton Bank played some role in the events that eventually led to Plaintiffs' foreclosures, their interest in the properties had long extinguished before the events surrounding the foreclosures began. The loans provided by Signature and Fulton Bank were pooled, securitized, and serviced by new parties in 2007. (*See* ECF No. 1 ¶¶ 12-16, 24-27). MERS' interest in the Thornville Drive property extinguished when it assigned the deed of trust to JP Morgan on March 23, 2009. (*Id.* at ¶ 18). Therefore, Plaintiffs' claims as to these defendants are not barred by *res judicata*.

All three elements of *res judicata* are met for defendants JP Morgan, Kondaur, Shapiro & Burson, and BWW Law Group. While the parties are not identical to those in the foreclosure action, they are in privity with them. The plaintiffs in the foreclosure case were the substitute trustees, including Jacob Gessing of BWW Law Group and John Burson of Shapiro & Burson. Each of these law firms are named defendants in the instant case. The substitute trustees were acting to enforce the rights of JP Morgan, a defendant here, under the promissory note and deed of trust associated with the Thornville Drive property. Similarly, Kondaur came into privity with substitute trustee Gessing after it was assigned the deed of trust during the

11

foreclosure proceedings. *See Vaeth v. Mayor and City Council of Baltimore City*, Civ. No. WDQ–11–0182, 2011 WL 4711904, at *3 (D.Md. Oct. 4, 2011) ("Privity exists when a non-party to the earlier litigation is 'so identified with a party . . . that he represents precisely the same legal right in respect to the subject matter involved.'") (*quoting Martin v. Am. Bancorporation Ret. Plan*, 407 F.2d 643, 651 (4th Cir. 2005)).[7]

With regard to the second element, federal and Maryland state courts have adopted the "transaction test" to determine the identity of the causes of action. *See Adkins v. Allstate Ins. Co.*, 729 F.2d 974, 976 (4th Cir. 1984); *DeLeon v. Slear,* 328 Md. 569, 589–90 (1992). Under this test, claims are considered a part of the same cause of action when they arise out of the same transaction or series of transactions. In making this determination, courts consider such pragmatic factors as "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *See*

---

[7] Furthermore, plaintiff Jacqueline McGhee, as part of her bankruptcy case, filed an adversary action against JP Morgan and Kondaur seeking to quiet title to the two properties, arguing that JP Morgan and Kondaur engaged in "intentional misrepresentations in the foreclosure action in order to force a sale of the Property." (ECF No. 5-5, at 2-3; ECF 9-10, at 2-3). On October 30, 2012, the bankruptcy court granted JP Morgan and Kondaur's motions to dismiss and dismissed the complaints with prejudice. (ECF No. 5-6; ECF No. 9-12).

12

Restatement (Second) of Judgments § 24(2) (1982). Claims may also arise out of the same transaction or series of transactions even if they involve different harms or different theories or measures of relief. *Id.* "The rules of claim preclusion provide that if the later litigation arises from the same cause of action as the first, then the judgment in the prior action bars litigation 'not only of every matter actually adjudicated in the earlier case, but also of every claim that might have been presented.'" *Orca Yachts v. Mollican, Inc.*, 287 F.3d 316, 318 (4th Cir. 2002) (*quoting Varat*, 81 F.3d at 1315).

In the current case, the claims put forth in the complaint are identical for *res judicata* purposes to those raised in the foreclosure cases. Plaintiffs' claims all stem from actions taken by lenders, servicers, and their trustees in connection with the refinancing of their two properties and the subsequent foreclosure of those properties based on what Plaintiffs claim were predatory loans, willful misrepresentations, and failure to comply with all legal requirements. These claims could have been raised and determined in the foreclosure proceeding or the adversary proceeding in bankruptcy court. *See Jones v. HSBC Bank USA, N.A.*, Civ. No. RWT-09-2904, 2011 WL 382371, at *5 (D.Md. Feb. 3, 2011) (plaintiff's claim that the foreclosure was improper because defendants submitted false and insufficient affidavits in connection therewith, is a claim that clearly

13

could have been raised in the circuit court proceeding); *Capel v. Countrywide Home Loans, Inc.*, Civ. Nos. WDQ-09-2374, WDQ-09-2439, 2010 WL 457534, at *4 (D.Md. Feb. 3, 2010) (finding claims are transactionally related when the current claims center on alleged defects in contract formation and the foreclosure action determined that the trustees had the right to foreclose).

In this case, the proper forum for Plaintiffs to raise their claims about the misdeeds of those connected with their foreclosure was at the foreclosure proceeding itself. The Plaintiffs were given multiple opportunities to raise their objections to the foreclosure sales. The record reflects that they in fact raised numerous claims in the Thornville Drive case, filing a counterclaim to the foreclosure action predicated almost entirely on violations of various federal laws. (*See* ECF No. 3-4). Additionally, plaintiff Jacqueline McGhee brought an adversary action in bankruptcy court against JP Morgan and Kondaur to quiet title to the two properties, alleging that they did not have standing to bring a foreclosure action and that they committed fraud by making intentional misrepresentations to support the foreclosure. (*See* ECF No. 5-5, at 2-3; ECF 9-10, at 2-3). To allow them to escape the doctrine of *res judicata* by claiming they failed to raise all their claims "would allow parties to frustrate the goals of res judicata through artful pleading and claim splitting given that '[a] single cause of

14

action can manifest itself into an outpouring of different claims, based variously on federal statutes, state statutes, and the common law.'" *Pueschel v. United States,* 369 F.3d 345, 355 (4th Cir. 2004) (*quoting Kale v. Combined Ins. Co. of Am.,* 923 F.2d 1161, 1166 (1st Cir. 1991)).

Finally, the circuit courts' December 29, 2010, and February 2, 2011, ratification orders were clearly final judgments on the merits of the foreclosure proceeding (ECF No. 7-3, 9-7), which Plaintiffs unsuccessfully challenged by filing emergency motions to stay the judgments. (ECF No. 5-2, 9-6). In addition, Plaintiffs filed appeals to the Court of Special Appeals, which were dismissed. (ECF No. 3-5, 5-2, dkt. no. 46). Plaintiffs argue that the validity of the foreclosure actions was not fully litigated in state court. As evidence of this contention, Plaintiffs point to the circuit court's opinions on their motions for an ex parte temporary restraining order, specifically its refusal to address Plaintiffs' claims of intrinsic fraud. (*See, e.g.*, ECF No. 20, at 5, plaintiffs opposition to motion to dismiss). Plaintiffs contend that they attempted to raise all their claims in the foreclosure action, but because they did not do so until the post-sale exceptions phase, the court did not address the claims. (*Id.*). Plaintiffs appear to be characterizing that refusal as akin to the circuit court not ruling on the merits of their claims, thereby failing

to meet one element of the *res judicata* doctrine. This is a mischaracterization. The circuit court did not refuse to consider Plaintiffs' claims; in fact, the court explicitly stated just the opposite. (*See* ECF No. 9-9, at 3 ("Upon review of the file in this case, this Court has acknowledged Defendants' continued allegations of fraud.")). The circuit court acknowledged Plaintiffs' allegations, but found that they did not rise to the level of "extrinsic fraud" needed to reopen an enrolled order of ratification. In any event, Plaintiffs' use of the *ex parte* opinions to evidence an absence of rulings on the merits is a red herring. The important ruling in foreclosure cases is the circuit court's ratification of the foreclosure sale. *See Capel*, 2010 WL 457534, at *4 ("When a state court finalizes a foreclosure after the 'plaintiff was given an opportunity to raise all objections to the foreclosure sale of [a] property, that adjudication is a final judgment on the merits.") (*quoting Anyanwutaku v. Fleet Mortgage Group*, 85 F.Supp.2d 566, 572 (D.Md. 2000)). Plaintiffs have provided no indication they were unable to present their claims prior to the circuit court ratifying the foreclosure sales. Plaintiffs had ample opportunity to raise their claims and, judging by the circuit court dockets and the documents provided, they took advantage of their opportunities. Therefore, all three elements of *res judicata* are met for Defendants JP Morgan, Kondaur,

16

Shapiro & Burson, and BWW Law Group and the claims against them will be dismissed.[8]

Upon dismissal of the claims against defendants JP Morgan, Kondaur, Shapiro & Burson, and BWW Law Group, three defendants remain: MERS, Signature, and Fulton Bank. Plaintiffs' claims against these defendants are subject to dismissal on other grounds.

First, plaintiffs' FDCPA claims are time-barred.[9] The FDCPA's statute of limitations provides that "[a]n action to

---

[8] Furthermore, the *Rooker-Feldman* doctrine bars lower federal courts from considering "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "The key inquiry is not whether the state court ruled on the precise issue raised in federal court, but whether the 'state-court loser who files suit in federal court seeks redress for an injury caused by the state-court decision itself.'" *Willner v. Frey*, 243 F.App'x 744, 747 (4th Cir. 2007) (*quoting Davani v. Virginia Dep't of Transp.*, 434 F.3d 712, 718 (4th Cir. 2005)). This court has no authority to consider claims that assert injuries based on the state court foreclosure judgments.

[9] The statute of limitations is an affirmative defense that a party typically must raise in a pleading under Fed.R.Civ.P. 8(c), rather than in a motion pursuant to Rule 12(b)(6). Dismissal is proper, however, "when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brooks v. City of Winston–Salem,* 85 F.3d 178, 181 (4th Cir. 1996); *see also* 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357, at 714 (3d ed. 2004) ("A complaint showing that the governing statute of limitations has run on the plaintiff's claim for relief is the most common situation in which the affirmative defense appears on the face of the pleading and provides a basis for a motion to dismiss

enforce any liability . . . may be brought in any appropriate United States district court . . . within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Because the current case was filed on October 18, 2012, Defendants' alleged conduct had to have occurred after October 18, 2011 to be within the statute of limitations. But the alleged FDCPA-violative conduct of MERS, Signature, and Fulton Bank occurred well before October 18, 2011. The latest act taken by Signature and Fulton Bank in connection with this complaint was providing the loans to Plaintiffs on December 4, 2006, and February 2, 2007 respectively. (ECF No. 1 ¶¶ 9, 22). MERS's latest act was assigning the Thornville Drive deed of trust to JP Morgan on March 23, 2009. (ECF No. 9-4). Because Plaintiffs did not commence their action in this court within one year of the date on which the violations occurred, their FDCPA claims as to Defendants MERS, Signature, and Fulton Bank are time-barred.[10]

---

under Rule 12(b)(6)."). The face of Plaintiffs' complaint clearly reveals the merit of Defendants' limitations defense; thus, dismissal on that ground is proper.

[10] Even if the claims against Defendants JP Morgan, Kondaur, Shapiro & Burson, and BWW Law Group were not barred by *res judicata*, the FDCPA claims against them would also be time barred. BBW Law Group and Shapiro & Burson—on behalf of JP Morgan—commenced their foreclosure actions on June 15, 2009 (Thornville Drive), and March 26, 2010 (Old Fort Drive). Kondaur was assigned the deed of trust on April 12, 2010. (ECF No. 1 ¶ 30). All of this occurred prior to the October 18, 2011, limitations period.

Second, Plaintiffs allege that Defendants violated RICO. Defendants Fulton Bank, MERS, and Signature each opposed this claim, arguing that the complaint did not plead all requisite elements of a RICO; Plaintiffs' allegations were supported by only bare assertions and conclusory statements that fail to satisfy the pleading requirements; and the claim is time-barred. (ECF No. 4-10, at 8-9; ECF No. 7-1, at 6-8; ECF 9-1, at 12-14). In their opposition to Defendants' motions, however, Plaintiffs do not discuss these claims. (*See* ECF Nos. 24, 27, 28). Therefore, the claim has been abandoned. *See Ferdinand–Davenport v. Children's Guild,* 742 F.Supp.2d 772, 777 (D.Md. 2010) ("By her failure to respond to [defendant's] argument" in a motion to dismiss, "the plaintiff abandons her claim.").

Finally, the state law claims of wrongful foreclosure and an action to quiet title fail as against MERS, Signature, and Fulton Bank. Even assuming a "wrongful foreclosure" cause of

---

Additionally, even if Plaintiffs were to allege later violations, the limitations period for FDCPA claims commences "from the date of the first violation, and subsequent violations of the same type do not restart the limitations period." *Fontell v. Hassett,* 870 F.Supp.2d 395, 404 (D.Md. 2012); *see also Alston v. Cavalry Portfolio Servs., LLC,* Civ. No. AW-12-3589, 2013 WL 665036, at *3 (D.Md. Feb. 22, 2013); *Reid v. New Century Morg. Corp.,* Civ. No. AW-12-2083, 2012 WL 6562887, at *4 (D.Md. Dec. 13, 2012). Plaintiffs' complaint revolves around alleged improper loans and illegal foreclosures. Those events commenced well before the October 18, 2011 limitations period.

action exists,[11] Plaintiffs have failed to state such a claim against these three defendants. Plaintiffs' allegations against these three defendants include predatory lending, overvaluation of property, and illegal assignment. (*See* ECF No. 1 ¶¶ 77-95). As discussed above, the interest of MERS, Signature, and Fulton Bank in Plaintiffs' properties ended long before the foreclosures commenced and Plaintiffs have made no allegations that these three defendants were involved in any way with the actual foreclosure actions. Consequently, their claim for wrongful foreclosure fails. *See Twombly*, 550 U.S. at 570. Because these three defendants were not involved in the foreclosure actions nor currently have any interest in Plaintiffs' properties, their action to quiet title must also fail.

**IV. Conclusion**

For the foregoing reasons, the court will grant Defendants' motions to dismiss. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge

---

[11] *See Davis v. Wilmington Finance, Inc.*, Civ. No. PJM-09-1505, 2010 WL 1375363, at *7 (D.Md. Mar. 26, 2010) ("Plaintiffs cite no authority, and the Court can find none, that 'Wrongful Foreclosure' is a separate cause of action in Maryland.").